**FILED**
JAMES J. WALDRON
**FEB 0 6 2012**
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **In Re:** | Chapter 7 |
| **RONALD LANGMAN and ETHEL LANGMAN,** | Case No.: 10-25658(RG) |
| Debtors. | |
| **JENNY BERSE,** | |
| Plaintiff, | Adv. No.: 10-2160(RG) |
| vs. | |
| **RONALD LANGMAN and ETHEL LANGMAN,** | <u>OPINION</u> |
| Debtors/Defendants. | |

**APPEARANCES:**

Jenny Berse, Esq.
21 South Union Ave
Cranford, NJ 07016-2844
*Attorney for the Plaintiff, Jenny Berse*

Santo J. Bonanno, Esq.
1430 State Route 23
Wayne, NJ 07470-5826
*Attorney for the Debtors/Defendants, Ronald Langman and Ethel Langman*

<u>**HONORABLE ROSEMARY GAMBARDELLA, BANKRUPTCY JUDGE**</u>

## MATTER BEFORE THE COURT

Before the Court is a Motion filed by joint Chapter 7 Debtors Ronald and Ethel

Langman seeking to dismiss the Adversary Complaint of Plaintiff Jenny Berse, Esq., for

failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil

Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012.    Ms. Berse's

Complaint seeks to except from discharge certain attorney's fees owed to her by co-

debtor Ethel Langman arising out of legal representation that Ms. Berse provided her in a

matrimonial action in New Jersey Superior Court.    Her Complaint argues for

nondischargeability of debts allegedly owed to her pursuant to an Order of the state court

issued by Hon. Nancy Sivilli, J.S.C., pursuant to 11 U.S.C. § 523(a)(5) and (a)(15).  A

hearing was held on June 27, 2011 and this Court reserved decision.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core

matter pursuant to 28 U.S.C. § 157(b)(2)(I).    The following constitutes this Court's

findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure

7052.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I. Background

#### a. The Divorce Proceeding and Ms. Berse's Charging Lien

Co-Debtors Ronald and Ethel Langman were married on September 2, 2000.

Berse Cert. Ex. B, at 1, ECF No. 5-2. Three children were born of the marriage.  In or

about 2009, the Langmans initiated divorce proceedings in the Superior Court of New

Jersey, Chancery Division: Family Part, Essex County, before the Hon. Nancy Sivilli, J.S.C. (Docket No. FM-07-1401-09). Adv. Compl. ¶ 1, ECF No. 1.

At some point in or prior to March 2010, Ethel Langman retained Jenny Berse, Esq., as her matrimonial counsel. Compl. ¶ 1.

On January 26, 2010, during the pendency of the divorce matter, the Debtors listed their marital residence at 35 Hampton Terrace, Livingston, New Jersey, for sale with Coldwell Banker Realtors at a listing price of $495,000.00. Compl. ¶ 2.

On March 16, 2010, Ms. Berse filed a motion with the Chancery Division seeking to be relieved as counsel and requesting an order for a charging lien for attorney's fees in the amount of $8,893.60. That same day, March 16, 2010, Ms. Berse sent a bill for her services to Ms. Langman for the same amount. Ms. Berse asserts that her correspondence complied with N.J.S.A. 2A:13-6 and Rule 1:20A-6 and included the option to pursue fee arbitration. *Id.* ¶¶ 3-4.

On March 30, 2010, Ms. Berse received a fax and e-mail from Joanna D. Brick, Esq., notifying her that Ms. Brick had been retained as matrimonial counsel by Ethel Langman. *Id.* ¶ 5.

On April 19, 2010, Judge Sivilli entered an Order for Ms. Berse to be relieved as counsel and awarding an attorney's charging lien on her behalf in the amount of $8,893.60 plus interest. The Order stated that Ethel Langman was now a *pro se* plaintiff. Compl. Ex. 2 ¶ 2. The Order further stated:

> Upon the sale of any marital property, including the sale of the marital residence, plaintiff's [Ethel Langman's] share of the net proceeds from such sale after paying the mortgage and home equity line of credit shall be paid over to Petitioner [Jenny Berse] to be held in escrow pending the outcome of the Fee Arbitration

3

> Committee or judicial determination and enforcement of
> Petitioner's Charging Lien.

*Id.* ¶ 6. The Order also stated:

> The parties, their fiduciaries, agents and representatives, including
> any current and succeeding attorneys[,] are hereby restrained from
> dissipating or otherwise disposing of any proceeds paid to the
> plaintiff [Ethel Langman] as a result of settlement of judicial
> determination in the matrimonial matter, pending the outcome of
> the Fee Arbitration Committee or judicial determination and
> enforcement of Petitioner's [Jenny Berse's] Charging Lien.

*Id.* ¶ 5.

By separate order dated April 19, 2010, Defendant Ronald L. Langman's application for

counsel fees and sanctions against Ms. Berse was denied by Judge Sivilli.

### b. *The Marital Settlement Agreement*

On April 26, 2010, the Debtors executed a Marital Settlement Agreement. Berse

Cert. Ex. B., at 1. That agreement intended to resolve all issues of alimony, child

support, distribution of property, payment of debts, all other financial and/or property

rights and counsel fees "as well as all other rights, remedies, privileges and obligations

arising out of the marital relationship or otherwise." Article VI of the agreement, titled

"Debts & Obligations," contained a subsection titled "Marital Debt" in which both

Ronald and Ethel Langman set their initials to a clause stating:

> The parties agree that attorney's fees Wife incurred with Joanna D.
> Brick, Esq. and Husband incurred with Adam E. Jacobs, Esq. in
> connection with their representation of the parties' divorce
> proceedings shall not be discharged in bankruptcy.

*Id.* at 21 ¶ 6.1. An additional clause, handwritten but initialed by both Debtors, states:

> Under no circumstances shall Husband's or Wife's attorney be
> permitted to seek or obtain counsel fees from Wife [or] Husband
> for fees incurred in connection with divorce proceedings, except
> for post-judgment matters.

4

*Id.* The parties likewise added and initialed a provision stating: "Parties shall adhere to all directives of their bankruptcy counsel in order to obtain a joint petition being filed prior to the parties' appearances for the entry of the final judgment of divorce." *Id.* at 22. Finally, Article VIII, "Counsel Fees," provides as follows:

> Each party agrees to pay and be responsible for the payment of their own counsel fees and costs incurred in connection with these divorce proceedings.   Should an attorney's lien attach to the parties' joint assets, the party who incurred said lien shall be responsible therefor and shall indemnify and hold harmless the corresponding party.

*Id.* at 24 ¶ 8.1.

On May 12, 2010, the Debtors took their marital residence off the market. Compl. ¶ 13 & Ex. 1. They have since stated that the property is currently in foreclosure. Debtors' Br. ¶ 4, ECF No. 4-1.

### c.  *The Langmans' Bankruptcy Filing*

On May 21, 2010, the Debtors filed a joint petition for relief under Chapter 7 of title 11 of the United States Code ("Bankruptcy Code"). Compl. ¶ 14. A debt of $8,900.00 to Jenny Berse, Esq. was listed on Schedule F, "Creditors Holding Unsecured Nonpriority Claims," as a debt of the co-debtor Ethel Langman. Pet. at 28, No. 10-25658 (Bankr. D.N.J. May 21, 2010), ECF No. 1.

The Debtors were formally divorced on May 24, 2010, as memorialized in a Dual Judgment of Divorce issued by Judge Sivilli. Berse Cert., Ex. C.

On May 25, 2010, Benjamin A. Stanziale, Esq. was appointed Chapter 7 Trustee, and on February 15, 2011, the Trustee filed a Report of No Distribution.

## II. **The Present Adversary Proceeding**

### a. *The Complaint*

On September 8, 2010, Ms. Berse filed an Adversary Complaint before this Court

seeking a determination that her attorney's charging lien in the amount of $8,893.60 is a

nondischargeable support obligation and/or marital debt pursuant to 11 U.S.C § 523(a)(5)

and (a)(15). Compl. ¶ 16. In her Complaint, she cites *In re Maddigan*, 312 F.3d 589 (2d

Cir. 2002), for the proposition that an award of legal fees creates a debt that is not

dischargeable in bankruptcy. Ms. Berse asserts that 11 U.S.C. § 522(f)(1)(A) permits a

debtor to avoid the fixing of a judicial lien, other than a lien that secures a debt of the

kind specified in § 523(a)(5) of the Bankruptcy Code. Plaintiff asserts the Debtors were

fully aware of the charging lien but did not make reference to it in their bankruptcy filing

or file any motion to determine its dischargeability. She also asserts the Debtors failed to

avail themselves of their option to try to have the lien avoided pursuant to 11 U.S.C.

§ 522(f)(1)(A) and knowingly failed to disclose the attorney charging lien. *Id.* ¶¶ 17-18.

Ms. Berse attached the following Exhibits to the Complaint:

1. A residential real estate listing from the Garden State Multiple
   Listing Service including the Debtors' marital home at 35
   Hampton Terrace, Livingston, NJ, showing, *inter alia*, that the
   home was withdrawn from the market on May 12, 2010.
   Compl. Ex. 1.

2. A copy of Judge Sivilli's Order dated April 19, 2010, relieving
   Ms. Berse as counsel for Ethel Langman and granting Ms.
   Berse an attorney's charging lien. Compl. Ex. 2.

3. A copy of a second Order signed by Judge Sivilli on April 19,
   2010, denying Ronald Langman's request for fees and
   sanctions against Jenny Berse. Compl. Ex. 3.

4. A copy of a letter sent from Ms. Berse to Ronald and Ethel
   Langman's bankruptcy counsel, Mr. Santo Bonanno, Esq. and

the Chapter 7 trustee Mr. Benjamin Stanziale, asserting that her attorney's lien is a nondischargeable "statutory lien" that should be removed from Schedule F (for unsecured nonpriority claims) and advising him that if the debt is not removed, Ms. Berse would file an adversary proceeding. Compl. Ex. 4.

### b.  Pleadings on the Present Motion to Dismiss

#### 1.  The Debtors' Motion

On September 29, 2010, Debtors Ronald and Ethel Langman filed a Motion to Dismiss the Adversary Complaint. In their Brief, they argue two main points. First, they assert that Ms. Berse's attorney's lien is not entitled to an exception from discharge under § 523(a)(5) or (a)(15) because the debt in question is not owed by a debtor to a spouse, former spouse, or child, but is instead a debt owed by one co-debtor to her attorney. The Debtors underline this point by noting that in *In re Maddigan*, a case cited by Plaintiff, the legal fees held nondischargeable by the court were held to be a debt the debtor owed to his children and was in the nature of support. Debtors' Br. ¶¶ 2, 5, 6.

Second, the Debtors assert no matrimonial court order has ever required Ronald Langman to pay Ethel Langman's legal fees. *Id.* ¶ 2. On the contrary, Debtors note that Judge Sivilli's Order of April 19, 2010 requires attorneys' fees to be paid from proceeds of the sale of the marital home. That home, it is asserted by Debtors, has since lost value and is now in foreclosure and fully encumbered with debts to first and second mortgagee-banks. Here, Debtors assert the property has a value of $430,000.00 with Chase Home Finance holding a first mortgage of $361,000.00 and Wells Fargo Bank, N.A. a second lien of $30,000.00. *Id.* ¶ 4. Debtors assert there will therefore be no closing as envisioned in the court order; sale of the home after closing costs will yield no payment

7

to Debtors and will likely yield too little money to pay any creditors, including Ms. Berse. E. Langman Cert. ¶¶ 2, 4, ECF No. 4-2.

### 2.  *Plaintiff's Opposition*

On October 18, 2010, Ms. Berse filed her Opposition to the Debtors' Motion to Dismiss, arguing several points in the accompanying brief. Pl.'s Opp'n Br., ECF No. 5-1.

First, Plaintiff argues her attorney's lien does fall within § 523(a)(5) and (a)(15) because Judge Sivilli's court order specifically stated that the lien should be paid from any proceeds paid to Ethel Langman. Further, Plaintiff asserts Judge Sivilli's Order clearly restrained the Debtors from "dissipating or otherwise disposing of any proceeds paid to [Ethel Langman] as a result of settlement or judicial determination in the matrimonial matter." Pl.'s Opp'n Br. ¶¶ 1-2.

Second, Plaintiff alleges Debtors and their matrimonial attorneys "collaborated" to avoid paying fees due to her. *Id.* ¶ 3 (identifying those attorneys as Joanna D. Brick, Esq., as counsel for Mrs. Langman, and Adam E. Jacobs, Esq. as counsel for Mr. Langman). Plaintiff argues a debtor's ability to avoid a judicial lien pursuant to § 522(f)(1)(A) does not apply to support debts specified in § 523(a)(5) and that *In re Maddigan* makes an award of legal fees nondischargeable. Plaintiff asserts that here, the Debtors were fully aware of the charging lien but made no reference to it in their bankruptcy filing. Plaintiff asserts that these facts suggest that the Debtors knew of the lien and collaborated not to pay it. *Id.* ¶¶ 4-5.

Third, Plaintiff asserts the Debtors knowingly misrepresented their income, expenses, and assets in the Petition, which they allegedly represented differently in other filings, including in a support order signed June 15, 2009, to which reference was made

in the Marital Settlement Agreement. *Id.* ¶ 6. Specifically, Plaintiff asserts, in relevant

part, as follows:

1.  Defendant Ronald Langman listed income of $9,583.33 per month on Part II of his Amended Chapter 7 Statements, but actually earns $10,833.33 per month based on three other sources: his 2009 paystubs, his original Schedule I statement, and the Marital Settlement Agreement, Berse Cert. ¶ 14;

2.  In Schedules B and C, the Debtors listed as exempt personal property only furniture worth $200.00 and books and CDs worth $150.00, whereas the Marital Settlement Agreement listed high-definition TVs, china, silverware and leather furniture, Berse Cert. ¶¶ 17-18;

3.  Debtors listed $400.00 worth of clothing in Schedule J when in fact Ronald Langman is "an attorney in New York and has a full wardrobe of suits, sport jackets, dress pants, dress shirts, ties and shoes...no doubt valued at significantly higher than $400," Berse Cert. ¶ 20;

4.  Debtors failed to list funds held in an IRA to be distributed to their children in the appropriate Schedule, Berse Cert. ¶ 24; and

5.  Credit card debts in the approximate amount of $39,000.00 which were to be divided and paid when the marital home was sold in accordance with the Marital Settlement Agreement, Berse Cert. ¶ 25.

Plaintiff likewise asserts the Debtors had "no intention" of paying their mortgage

based on the language of the Marital Settlement Agreement, which stated "[t]he parties

anticipate that in light of their bankruptcy petition, the marital residence shall be foreclosed

upon. Based on the foregoing, neither party shall have an obligation to continue paying the

mortgage and/or HELOC pending foreclosure." Berse Cert. ¶ 15.

Finally, Plaintiff asserts payment of alimony to Ethel Langman while "[she is

permitted] to live in the marital residence rent free" constitutes a further attempt to frustrate

and hide the equitable distribution of assets. Berse Cert. ¶ 23, *see also* Berse Cert. Ex. B ("Marital Settlement Agreement").

### c.    *The Hearing Held June 27, 2011*

On June 27, 2011, this Court conducted a hearing on the Motion to Dismiss. Counsel for the Debtors argued that as no order exists from the Superior Court of New Jersey ordering Ronald Langman to pay the attorney fees of Ethel Langman, the Complaint should be dismissed as to Ronald Langman.

As to Ethel Langman, counsel urged that as Ms. Berse's claim is a direct claim against her own client, Ethel Langman, the claim does not fall within § 523(a)(5) and § 523 (a)(15).

Ms. Berse argued that the Complaint raises allegations of "collusion" and concealment against the Debtors. Berse asserts there is evidence of Debtors misrepresenting Ronald Langman's income by $1,300.00 per month, and misrepresenting monthly mortgage payments as $6,500.00 instead of $3,900.00 per month, in addition to failing to list in the bankruptcy schedules a $9,000.00 IRA held by Ronald Langman and the asserted priority statutory attorney's lien held by Plaintiff. Debtors' counsel replied that Plaintiff's claim was properly listed in the Debtors' schedules as a non-priority unsecured claim, which is dischargeable in bankruptcy.

Debtors' counsel conceded that some of Ms. Berse's attorney's fees were attributable to services in pursuit of Ethel Langman's alimony and support claims, in addition to claims for equitable distribution – such as obtaining *pendent lite* support orders. Debtors' counsel,

however, insisted that such services constituted only a small portion of the services performed by Ms. Berse.

Ms. Berse urged that her attorney's lien is a priority statutory lien which attached pre-petition on April 19, 2010, and which was properly filed in Trenton, New Jersey. Ms. Berse also argued that Ethel Langman got payment in kind – akin to a "settlement" against which Berse's charging lien should attach – including that Ms. Langman continues to reside in the residence without paying the mortgage. The Court here notes the Chapter 7 trustee has formally abandoned the estate's interest in the property at 35 Hampton Terrace, Livingston, New Jersey and issued a Chapter 7 Trustee Report of Non-Distribution in this case.

### d.  Subsequent Pleadings

#### 1.  Debtors' Letter Brief

On July 13, 2011, Debtors submitted a supplemental letter brief discussing two bankruptcy cases from this district and making several points in response to Ms. Berse's allegations of collusion and concealment. Debtors' Letter Br., July 13, 2011, ECF No. 8. First, Debtors cite *Clair, Greifer LLP v. Prensky (In re Prensky) (Prensky I)*, 416 B.R. 406 (Bankr. D.N.J. 2009) (Kaplan, J.), *aff'd sub nom. Prensky v. Clair Greifer LLP (Prensky II)*, 2010 WL 2674039 (D.N.J. June 30, 2010) (Wolfson, J.), asserting that attorney's fees in that case were held nondischargeable because the fees were effectively "owed to or recoverable by the former spouse or the child of the debtor," and were merely payable to the firm. Additionally, the court held it was clear that if the debt was found to be dischargeable, the law firm had the right to pursue the non-debtor spouse, their direct client, for unpaid attorneys' fees. Debtors distinguish *Prensky I* from the case at bar by noting that the present

case concerns a debt owed directly by a co-debtor client to her lawyer.    Second, Debtors discuss *Sodini & Spina, LLC v. DiBattista (In re DiBattista)*,[1] also from this District, in which Bankruptcy Judge Steckroth dismissed a claim for nondischargeability of attorneys' fees was based on a pre-petition agreement not to discharge a certain debt in bankruptcy, holding that such agreements are against public policy.    Debtors' Letter Br. 1 (citing Mary Pat Gallagher, *Lawyer Seeks to Hold Client to Alleged Vow to Pay Fees even if Bankrupt*, N.J. L.J., Feb. 1, 2010).

As for Ms. Berse's allegations of collusion and concealment, Debtors assert that even assuming, *arguendo*, the allegations were true, they have no bearing on the question of nondischargeability.    Finally, Debtors take issue with Ms. Berse's calculations of their mortgage payment debt, asserting that she erred by looking at the Means Test which uses a certain computer program.

### 2. *Ms. Berse's Letter Reply*

On July 25, 2011, Ms. Berse filed a Letter Brief in Response.  Pl. Letter Br., July 25, 2011, ECF No. 9.    In it, Ms. Berse asserts that her attorney's fees constitute a nondischargeable "domestic support obligation" pursuant to 11 U.S.C. § 101(14A) and § 523(a)(5) as the fees were incurred to secure alimony and child support and that *Prensky I* supports her claim.  She distinguishes the present proceeding from *In re DiBattista*, noting that here no pre-petition agreement took place.  Ms. Berse again asserts that an attorney charging lien is a statutory lien not dischargeable in bankruptcy and reasserts her allegations of collusion and concealment, now explicitly characterizing them as fraud.

### 3. *Debtors' Second Letter to the Court*

---

[1] Ch. 7 Case No. 09-19165, Adv. No. 09-02104 (Bankr. D.N.J. Oct. 13. 2009), *appeal dismissed* Case No. CV-10-00044 (D.N.J. July 14, 2010) (Hayden, J.).

On October 12, 2011, Debtors submitted a second supplemental letter bringing a recently decided case to the Court's attention and asking the Court to consider same. Debtors' Letter Br., Oct. 12, 2011, ECF No. 10. In it, the Debtors reference *Pernini v. Pernini (In re Budd Lerney, P.C.)*, 2011 WL 4483489 (N.J. Super. Ct. App. Div. Sept. 29, 2011) (per curiam), which found an attorney charging lien unenforceable by a husband's attorneys against a former marital residence owned formerly by the parties. The Debtors argue that this decision has a direct impact on the immediate matter and asked the Court to consider that case in making its decision.

4. *Ms. Berse's Second Letter Reply to the Court*

On February 2, 2012, Ms. Berse submitted her response to the Debtors' second letter to the Court. Pl. Letter Br., Feb. 2, 2012, ECF No. 11. In it, she distinguished *Perini v. Perini* from the immediate case as well as addressing its precedential value in this Court. She additionally reiterated her claims that the Debtors were less than honest in their bankruptcy filing, both in their reported indebtedness and also in their intention. Ms. Berse claimed the Debtors settled their divorce and filed for bankruptcy in part in collusion to hide money and assets rather than satisfying the attorney's charging lien.

## LEGAL STANDARDS

### I. Standard for a Motion to Dismiss

Federal Rule of Civil Procedure 8(a), made applicable in bankruptcy court by

Federal Rule of Bankruptcy Procedure 7008, requires that a "pleading that states a claim

for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."

Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008.

Parties seeking to dismiss a complaint for failure to state a claim may do so on

motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which is made applicable in

bankruptcy court by Federal Rule of Bankruptcy Procedure 7012.    Fed. R. Civ. P.

12(b)(6); Fed. R. Bankr. P. 7012.

When considering a motion to dismiss, a court must accept all well-pleaded

allegations in the complaint as true, view them in the light most favorable to the plaintiff,

and determine whether, under any reasonable reading of the complaint, the plaintiff may

be entitled to relief. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).   To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570, 127 S. Ct. 1955, 1973 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d

203, 210 (3d Cir. 2009).   "A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

The United States Supreme Court has set forth a two-step analysis for adjudicating a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949-50. First, a court should identify and reject labels, conclusory allegations, and formulaic recitation of the elements of a cause of action. Second, a court must draw on its judicial experience and common sense to determine whether the factual content of a complaint plausibly gives rise to an entitlement to relief. The court must infer more than the mere possibility of misconduct. *Id.* This does not impose a "probability requirement" at the pleading stage, but requires a showing of "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In deciding motions to dismiss under Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A court may also take judicial notice of a prior judicial opinion. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

II. **Standard for Nondischargeability of Matrimonial Obligations Under 11 U.S.C. §§ 523(a)(5) and (a)(15)**

### a. *The General Standard*

The United States Supreme Court has held that the primary purpose of the Bankruptcy Code is to provide a "fresh start" to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654 (1991). As a result, in a trial on the merits, the creditor bears the burden of proving that a debt is nondischargeable under § 523(a) under a preponderance of the evidence standard, and "exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." *Ins. Co. of Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir. 1995); *see also Grogan*, 498 U.S. at 287-88.[2]

### 1. *Section 523(a)(5)*

Section 523(a)(5) of the Bankruptcy Code provides an exception from discharge for any debt for a "domestic support obligation." 11 U.S.C. § 523(a)(5). "Domestic support obligation" is defined in § 101(14A) as a debt that is

(A) owed to or recoverable by—

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

---

[2] This policy of safeguarding the debtor "is tempered, however, when the debt at issue arises from a divorce or separation agreement. . . . The §§ 523(a)(5) and (a)(15) exceptions from discharge are thus construed more liberally than other Section 523 exceptions." *Prensky II*, 2010 WL 2674039, at *3 (citing *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998)); *see also Aldrich v. Papi (In re Papi)*, 427 B.R. 457, 461 (Bankr. N.D. Ill. 2010).

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

Thus, the elements that must be satisfied for a domestic support obligation to arise are as follows: (i) the payee of the obligation must be either a governmental unit or a person with a particular relationship to the debtor or a child of the debtor; (ii) the nature of the obligation must be support; (iii) the source of the obligation must be an agreement, court order, or other determination; and (iv) the assignment status of the obligation must be consistent with paragraph (D).

*In re Anthony*, 453 B.R. 782, 786 (Bankr. D.N.J. 2011) (Kaplan, J.). The amendments made by the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-08, 119 Stat. 23, "did not alter [this] standard for determining whether an obligation is in the nature of support." *Id.* (citing *Taylor v. Taylor (In re Taylor)*, 455 B.R. 799, 804-05 (Bankr. D.N.M. 2011)).

"Whether something is actually in the nature of support is [therefore] a question of federal bankruptcy law, and not state law. . . . Courts have held that the 'label applied to the obligation by the [state] court or the parties is not necessarily controlling for Bankruptcy Code purposes.'" *LaVergne v. LaVergne (In re LaVergne)*, 2011 WL

17

1878093, at *2 (Bankr. D.N.J. May 17, 2011) (Ferguson, J.) (quoting *Werthen v. Werthen*

*(In re Werthen)*, 329 F.3d 269, 272–74 (1st Cir. 2003)).

> The Third Circuit Court of Appeals has noted that

> > whether an obligation is in the nature of alimony, maintenance or
> > support, as distinguished from a property settlement, depends on a
> > finding as to the intent of the parties at the time of the settlement
> > agreement. . . . That intent can best be found by examining three
> > principal indicators. . . . First, the court must examine the language
> > and substance of the agreement in the context of surrounding
> > circumstances, using extrinsic evidence if necessary. . . . [Second,
> > the court must examine] the parties' financial circumstances at the
> > time of the settlement. . . . Third, the court should examine the
> > function served by the obligation at the time of the divorce or
> > settlement. An obligation that serves to maintain daily necessities
> > such as food, housing and transportation is indicative of a debt
> > intended to be in the nature of support.

*Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 762-63 (3d Cir. 1990).

2. *Section 523(a)(15)*

Section 523(a)(15) applies to non-support obligations arising out of a divorce or

separation, excepting from discharge any debt

> to a spouse, former spouse, or child of the debtor and not of the
> kind described in paragraph (5) that is incurred by the debtor in the
> course of a divorce or separation or in connection with a separation
> agreement, divorce decree or other order of a court of record, or a
> determination made in accordance with State or territorial law by a
> governmental unit[.]

11 U.S.C. § 523(a)(15). This provision has been read to encompass a range of

matrimonial debts, including obligations arising out of property settlement agreements

and equitable distribution judgments. *In re Clouse*, 446 B.R. 690, 707 n.58 (Bankr. E.D.

Pa. 2010) (Fehling, J.) (holding that nondischargeability claims for equitable distribution

debts must be brought under § 523(a)(15), not (a)(5), as equitable distribution is not

included in the definition of "domestic support obligation" under § 101(14A)); *accord*

*Lawrence v. Lawrence (In re Lawrence)*, 237 B.R. 61, 83, 86-87 (Bankr. D.N.J. 1999)

(Stripp, J.).

### b. *Changes Brought About by BAPCPA, as Interpreted in this District*

The current statutory language of § 101(14A), § 523(a)(5) and § 523(a)(15) is the

result of amendments enacted as part of the BAPCPA amendments. Courts have found

that BAPCPA produced two significant changes in the law governing the

nondischargeability of matrimonial debts.

### 1. *Expanded Applicability of § 523(a)(15)*

First, BAPCPA eliminated two balancing tests that had formerly provided debtors

with defenses to nondischargeability for non-support debts based on (1) whether the

debtor would be able to pay the debt and (2) whether discharging the debt would result in

a benefit to the debtor that would outweigh the detrimental consequences to the former

spouse or child. *Gilman v. Golio (In re Golio)*, 393 B.R. 56, 61 (Bankr. E.D.N.Y. 2008)

(Eisenberg, J.). The elimination of these defenses was intended to reflect Congress's

strong policy in favor of protecting ex-spouses and children and to cover any matrimonial

debts that "should not justifiably be discharged." *In re LaVergne, supra*, at *3 (citing,

*inter alia, In re Crosswhite, supra*).

As a practical consequence, it is now no longer necessary for bankruptcy courts to

determine the exact extent to which a state court matrimonial judgment constitutes a

"domestic support obligation" if the plaintiff can demonstrate that the judgment would be

nondischargeable in any event under § 523(a)(15) as a debt that is (1) owed to "a spouse,

former spouse, or child of the debtor" and that was (2) "incurred by the debtor in the

course of a divorce or separation or in connection with a separation agreement, divorce

decree or other order of a court of record." *In re Golio*, 393 B.R. at 62; *see also Prensky II*, *supra*, at *8 (affirming the bankruptcy court's finding that a debt incurred in a divorce decree was nondischargeable under (a)(15) irrespective of whether it was a "domestic support obligation"); *Tarone v. Tarone (In re Tarone)*, 434 B.R. 41, 49 (Bankr. E.D.N.Y. 2010) (Craig, C.J.) ("[U]nder BAPCPA, all debts owed to a spouse, former spouse, or child of a debtor are nondischargeable if incurred in the course of a divorce proceeding, notwithstanding the debtor's ability to pay the debt or the relative benefits and detriments to the parties."); *Monastra v. Monastra (In re Monastra)*, 2010 WL 3937354 (Bankr. E.D. Pa. Oct. 6, 2010) (Frank, J.) (citing *Tarone, supra*) (finding counsel fees awarded to a non-debtor spouse by matrimonial court order nondischargeable under § 523(a)(15) whether or not they are domestic support obligations under (a)(5)). As Judge Eisenberg noted in *Golio*,

> In individual Chapter 7 and 11 cases, the distinction between a domestic support obligation and other types of obligations arising out of a marital relationship is of no practical consequence in determining the dischargeability of the debt. . . . The enactment of subsection 523(a)(15), and the increase in the scope of the discharge exception effected by the 2005 amendments, expresses Congress's recognition that the economic protection of dependent spouses and children under state law is no longer accomplished solely through the traditional mechanism of support and alimony payments. . . . Property settlement arrangements are often "important components of the protection afforded individuals who, during the marriage, depended on the debtor for their economic well-being."

*In re Golio*, 393 B.R. at 61 (citing Collier on Bankruptcy ¶ 523.21 (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev.)).

2.  *Expansion of Standing for Third Parties*

Another result of the new statutory framework under BAPCPA is that third parties

now have greater standing to bring nondischargeability claims for divorce-related debts

under both § 523(a)(5) and (a)(15).  Before the passage of BAPCPA, courts in this

Circuit and many others had already broadly interpreted § 523(a)(5) to provide an

exception from discharge for certain debts to third parties, such as law firms, when the

debts were incurred by the spouse, ex-spouse, or child of the debtor in furtherance of

domestic support obligations, on the principle that "dischargeability must be determined

by the substance of the liability rather than its form." *Falk & Siemer, LLP v. Maddigan*

*(In re Maddigan)*, 312 F.3d 589, 593 (2d Cir. 2002) (citing *Pauley v. Spong (In re*

*Spong)*, 661 F.2d 6, 9 (2d Cir. 1981)) (holding that "[t]he fact that the debt is payable to a

third party (here, [a law firm]) does not prevent classification of that debt as being owed

to Maddigan's child"); *see Allen v. Eisenberg (In re Eisenberg)*, 18 B.R. 1001, 1003

(Bankr. E.D.N.Y. 1982) (Parete, J.) ("The apparent intent and purpose of 11 U.S.C.

§ 523(a)(5) is to prevent a debtor from discharging his responsibilities to an ex-spouse or

children, even to the extent that such support was in the form of a debt to be paid to a

third party."); *see also In re Papi, supra*, 427 B.R. at 462 (citing, *inter alia*, *In re*

*Maddigan*, 312 F.3d at 597) (noting that "a majority of courts have held

nondischargeable under Section 523(a)(5) awards of attorney's fees incurred by a spouse,

former spouse, or child in dissolution or support litigation, notwithstanding a provision

for direct payment to the attorney"); *Romeo v. Romeo (In re Romeo)*, 16 B.R. 531, 536

(Bankr. D.N.J. 1981) (DeVito, J.) ("Legal fees and costs expended by defendant spouse

for enforcement of the nondischarged/nondischargeable debts are similarly held to be nondischargeable").

Post-BAPCPA, in *Prensky I*, Judge Kaplan applied this same principle of "substance over form" to an (a)(15) claim, holding the intent of the BAPCPA amendments was to "increase the scope of the discharge exception effected by the 2005 amendments and not limit the protection to . . . spouses, former spouses and children of the debtor." *Prensky I*, 416 B.R. at 410 (granting standing to a former spouse's law firm under (a)(15) to recover legal fees from the debtor, pursuant to an order of the matrimonial court, whose explicitly stated purpose was to "level the playing field" for the benefit of the less moneyed wife and penalize the debtor husband for failing to abide by numerous matrimonial court orders, including *pendente lite* support orders as well as the terms of the divorce judgment itself).

On appeal, Judge Wolfson affirmed the Bankruptcy Court's decision. The District Court held that since courts were no longer required to evaluate the debtor's ability to pay as a factor in a § 523(a)(15) analysis, the focus is primarily the nature of the indebtedness. *Prensky II, supra*, at *4–6. Relying on *In re Golio, supra*, 393 B.R. 56, Judge Wolfson upheld the Bankruptcy Court's determination of nondischargeability pursuant to § 523(a)(15), supporting the "substance over form" approach and finding that even though the indebtedness was made payable to a third party, the divorce decree had created a debt, fully enforceable as a judgment of the domestic relations court, and thus the debt was incurred at the time of the divorce and nondischargeable pursuant to § 523(a)(15). *Id.* at *8. The District Court went further and held that "even if the Bankruptcy Court had characterized the [indebtedness] as a § 523(a)(5) domestic support

obligation, the same outcome would result," despite the debtor's argument that the indebtedness was not in the "nature of support" because it was not so characterized in the divorce court's decree. Judge Wolfson rejected that argument, citing § 101(14A)(B) and holding that the substance of the divorce court's decision, which contained references to "the less monied spouse" and its intent to level the playing field, created a nondischargeable domestic support obligation pursuant to § 523(a)(5). *Id.* at *8–9.

In other Circuits, courts have interpreted the language of § 523(a)(5) and (a)(15) more narrowly, both pre- and post-BAPCPA, and have not expressly adhered to the equitable doctrine of "substance over form" that guides decisions in this Circuit. For an incisive review of the three divergent lines of authority governing bankruptcy courts' varying treatment of § 523(a)(5) cases involving domestic support obligations payable directly to third parties such as law firms, both pre- and post-BAPCPA, see *Kassicieh v. Battisti (In re Kassicieh)*, 425 B.R. 467, 471-81 (Bankr. S.D. Ohio 2010).[3] *See also Loe, Warren, Rosenfield, Katcher, Hibbs, & Windsor, P.C. v. Brooks (In re Brooks)*, 371 B.R. 761, 766 (Bankr. N.D. Tex. 2007) (holding the BAPCPA amendments "unambiguously limited the parties to whom a non-dischargeable divorce-related debt may be owed under section 523(a)(15)" to the "spouse, former spouse, or child of the debtor").

---

[3] The three lines of authority discussed in *Kassicieh* are: (1) decisions strictly adhering to the "plain meaning of the code" and finding support debts payable directly to third parties to be outside the scope of § 101(14A) and therefore fully dischargeable; (2) decisions "declining to follow the plain meaning of the statute" and holding that dischargeability turns on whether the debt is in substance a support debt even if in form it is not; and (3) decisions creating a "limited exception to the plain-meaning rule" allowing exception to discharge only for debts to third parties to which the debtor's spouse or ex-spouse, or a parent of the debtor's child, is *jointly liable* along with the third party. As implied above, cases in the Third Circuit—as well as in the Second Circuit—have consistently adhered to the second line of authority, which grants bankruptcy courts the broadest equitable discretion in granting exceptions to discharge based on a preference for "substance over form." *See, e.g., Prensky I, supra.*

Judge Kaplan, in *Prensky I*, noted the difference between the facts before it and

the *Brooks* case:

> In *Brooks,* the law firm sued the debtor and the former spouse for fees during
> the pendency of a divorce action. The court awarded fees to the law firm, payable
> by each party, thereby making the debt at issue there "recoverable by" only the
> law firm. The debt was not awarded or owed *to* either spouse but rather payable
> and owed *by* each of them to the law firm. Clearly, under those circumstances, the
> fees were not of the kind owed to a "spouse, former spouse or child of the
> debtor." This stands in marked contrast to the facts in the case at bar, where the
> matrimonial court expressly ruled that could fees were being awarded to Ms.
> Prensky to "level the playing field." Accordingly, this Court is neither bound nor
> persuaded by the *Brooks* case.

416 B.R. at 410.

## ANALYSIS AND OPINION OF LAW

### I.  The § 523(a)(5) Claim

Here, the parties have stipulated that at least some of Ms. Berse's legal fees are

attributable to services rendered in furtherance of alimony, maintenance, or support.   In

the hearing held before this Court on June 27, 2011, counsel for the Debtors expressly

declined to contest Ms. Berse's assertion that at least a small portion of her fees were for

negotiations over the terms of *pendente lite* support orders.

However, the threshold standard for nondischargeability of domestic support

obligations under the Bankruptcy Code, as outlined in § 101(14A), requires that the debt be

"owed to or recoverable by a spouse, former spouse, or child of the debtor or such child's

parent, legal guardian, or responsible relative; or a governmental unit."   § 101(14A)(A).

Ms. Langman's debt to Ms. Berse does not meet this requirement.  First, it is a debt that was

incurred *by* Ms. Langman in furtherance of her *own* maintenance or support (or for that of

her own children).   Second, pursuant to Judge Sivilli's Order establishing the lien, the debt

is owed to or recoverable by Ms. Berse alone, not Ms. Langman or her children.

Without meeting this threshold requirement, the debt to Ms. Berse simply cannot fall within the scope of the revised statute, whose goal was to protect the interests of spouses and children who had relied on the debtor for their well-being during the course of the marriage. *See Golio, supra*, 393 B.R. at 61. The debt owed to Ms. Berse is not a debt that was ever owed by a debtor to his or her former spouse or child: it is simply a legal bill, owed by one co-Debtor spouse to her own attorney. Even when the statute is interpreted broadly under the *Prensky* cases' adoption of the equitable "substance over form" principle, the Plaintiff's claim for nondischargeability under § 523(a)(5) must fail as a matter of law and the Motion to Dismiss is granted as to that claim.

## II. The § 523(a)(15) Claim

The Plaintiff faces a similar obstacle in her claim brought under § 523(a)(15). As a threshold matter, she must demonstrate that her non-support-related legal fees are a "debt to a spouse, former spouse, or child of the debtor." § 523(a)(15). As with the support-related debts, Plaintiff has failed to demonstrate this. The non-support-related component of the debt, like the support-related component, was in fact incurred by Ms. Langman herself, and the debt is owed to Ms. Berse alone, not to Ms. Langman or her children.

Judge Sivilli's Order of April 19, 2010 granting the charging lien stated specifically, in paragraph 6, that payment of the lien should be drawn from Ethel Langman's share of the proceeds from the sale of the marital residence. The Order did not require Ronald Langman to pay any portion of the lien, and the Order was not issued to impose any penalty or sanction against him (unlike in *Prensky*) or with any stated purpose of providing economic support to Ethel Langman. As a result, the non-support-related component of the lien cannot reasonably be viewed as falling within the purview of Congress's intent, in passing

the BAPCPA amendments, to provide expanded protection to spouses who relied on bankrupt debtors for their economic protection during the marriage. [4]

The Langmans have expressly agreed to handle their legal fees separately from one another. A handwritten and initialed clause added to paragraph 6.1 of the Marital Settlement Agreement specifically states that

> Under no circumstances shall Husband's or Wife's attorney be permitted to seek or obtain counsel fees from Wife [or] Husband for fees incurred in connection with divorce proceedings, except for post-judgment matters.

Article VIII of the same Agreement, titled "Counsel Fees," specifically states,

> Each party agrees to pay and be responsible for the payment of their own counsel fees and costs incurred in connection with these divorce proceedings. Should an attorney's lien attach to the parties' joint assets, the party who incurred said lien shall be responsible therefor and shall indemnify and hold harmless the corresponding party.

Given these stipulations, and given the plain language of the Code and of Judge Sivilli's Order granting the lien, this Court finds that the debt in question is a pre-petition claim against the Debtor for legal services rendered to her by her own attorney, which does not fall within the purview of § 523(a)(15), even when viewed broadly, in accordance with *Prensky*, under the principle of "substance over form" to promote Congress's intent. Accordingly, the Motion to Dismiss the Adversary Proceeding is granted as to this claim.

---

[4] The Court did, pursuant to the Debtors' request in their Second Letter, consider the recently decided *Perini* case. It finds, however, the *Perini* decision to have limited relevance to this case. In *Perini*, the N.J. Superior Court, Appellate Division was determining whether a charging lien levied by an attorney against his former client, who was embroiled in a divorce proceeding at that time, could attach to the husband-client's interest in the marital residence. The court found that the lien could not attach because based on the language of the Lien Act (N.J.S.A. 2A:13-5), a charging lien may only attach to the proceeds awarded in the attorney's client's favor, and there were no such proceeds awarded the husband-client. *Perini*, 2011 WL 4483489, at *4-5. This case, unlike *Perini*, turns on the threshold issue of whether the Bankruptcy Code provision applies, meaning the *Perini* court's determination of whether a charging lien may attach is largely irrelevant here.

### III. Plaintiff's Other Allegations

As for Ms. Berse's allegations of fraudulent collusion and concealment of assets, the Court notes that she has not brought a claim for nondischargeability under § 523(a)(2), (a)(4) or (a)(6) or sought denial of discharge under § 727(a). This Court will refrain from issuing a ruling on claims not brought before it. Nor does this Opinion address the issue of whether or not Ms. Berse's attorney charging lien should be enforced herein – and so characterized as a secured or priority claim rather than an unsecured non-priority debt. That can only be determined by a separate motion and/or proceeding to be filed by Ms. Berse before this Court.

### CONCLUSION

The Debtors' Motion to Dismiss Adversary Proceeding 10-2160(RG) is GRANTED. An order shall be submitted in accordance with this Decision.

ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE

DATED: February 6, 2012